## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY TSADIK, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **VERIFIED CLASS ACTION COMPLAINT** |
| v. | |
| BUSPATROL AMERICA, LLC, | |
| Defendant. | |

By and through his undersigned counsel, Plaintiff Guy Tsadik ("Plaintiff") brings this putative class action on behalf of himself and all other similarly situated persons (collectively, the "Class") against BusPatrol America, LLC ("BusPatrol" or "Defendant"), and alleges, with personal knowledge and upon information and belief as to those of others, as follows:

## I. PRELIMINARY STATEMENT

1.      This is a putative class action brought against Defendant seeking damages sustained by members of the Class as a direct result of Defendant's unlawful conduct, including but not limited to such conduct in violation of New York Vehicle and Traffic Law ("VTL") § 1174-a, Town of Hempstead Code ("Town Code") § 186-2(B)(2).

2.      VTL § 1174-a imposes a penalty on drivers when they overtake and pass a stopped school bus, provided, among others, that the bus (1) activates a stop-arm, (2) has stopped in relation to receiving or discharging school bus passengers, and (3) has appropriate markings and equipment, such as flashing lights necessary to warn drivers of a stopped bus.

3.      Furthermore, Town Code § 186-2(B)(2) provides that under a program pursuant to VTL § 1174, "[n]o mobile school bus photo violation monitoring system shall be installed or

operated on any such school buses unless the Town and such school district **enter into an agreement for such installation and operation**."[1]

4.      Defendant BusPatrol is a private, for-profit company that offers services to local governments pursuant to which it *inter alia* gathers evidence; identifies violations; issues notices; compiles evidence packets; and collects and disburses penalties. In exchange, Defendant receives a substantial portion of the revenues received, typically at or above forty percent (40%), or about the same amount received by the local government.

5.      BusPatrol, in accordance with its standard agreements, require localities to perform only a minimal role in issuing, collecting, and enforcing VTL § 1174-a. BusPatrol conducts all other duties and responsibilities.

6.      As alleged herein, upon information and belief, Defendant BusPatrol either directly or indirectly installed such school bus cameras onto school buses for school districts that did not come to an agreement with the Town of Hempstead (the "Town"), and as a result, Plaintiff and countless other Class members received NOLs to pay fines for violations of law to which they are not subject.

7.      This allegation is corroborated by an investigation conducted by *Newsday*, which found that the Town "issued more than 80,000 school bus camera tickets over the last two years in and around school districts that **never agreed to participate in the controversial program**."[2] The investigation found that the tickets, which were issued within the Baldwin, Hempstead, Lawrence and Valley Stream 13 districts, represent more than a quarter of all school bus camera citations issued in the Town in 2023 and 2024. If these tickets were to be collected, they would

---

[1] All emphasis has been added unless otherwise indicated.
[2] Payton Guinon, *Town of Hempstead issued 80,000 school bus camera tickers in districts that don't participate in the program*, NEWSDAY, Jan. 23, 2025, https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib?utm_medium=web_share_api&utm_campaign=web_share_api.

be worth approximately $20 million to the program.

8.     Defendant has thus unlawfully imposed fines upon Plaintiff and the Class by falsely representing that such fines are in accordance with VTL § 1174-a and Town Code § 186-2—in reality, without an agreement with a given school district, the imposition of such fines within that district is legally unauthorized.

9.     Defendant's conduct relating to VTL § 1174-a and Town Code § 186-2 served to unjustly enrich Defendant; to convert the property of Plaintiff and the Class; to negligently misrepresent Plaintiff's and the Class' legal obligation to pay fines for violations of VTL § 1174 and/or Town Code § 186-2; to induce Plaintiff and the Class to pay fines that they did not lawfully owe; to conceal from Plaintiff and the Class that such fines were not lawfully imposed; to impose fines upon Plaintiff and the Class without reasonable cause; and to engage in a scheme of deceptive business practices.

10.     Plaintiff and the Class have been harmed and continue to face further risk of harm from the imposition of legally unauthorized fines pursuant to VTL § 1174 and/or Town Code § 186-2 by Defendant.

## II.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. 1332(d), the Class Action Fairness Act ("CAFA").

12.     This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and is a corporation who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the

transactions and wrongs complained of herein occurred in this District.

## III.    THE PARTIES

### A.    Plaintiff

14.    Plaintiff Guy Tsadik is a citizen of the State of New York. Plaintiff improperly received a Notice of Liability ("NOL") on at least two separate occasions pursuant to VTL § 1174 and/or Town Code § 186-2 as a result of a mobile school bus photo violation monitoring system that was installed or operated on a school bus in a local where the school district didn't enter into an agreement for such installation and operation.

### B.    BusPatrol

15.    Defendant BusPatrol is a limited liability corporation with a principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079. Defendant BusPatrol is registered with the New York State Department of State as a foreign limited liability company in New York County.

## IV.    STATEMENT OF FACTS

### A.    Legislative History

#### i.    New York VTL Section 1174-a

16.    In 1959, New York State enacted VTL 1174, which made it a violation to pass a school bus under certain conditions, particularly when a school bus was in the process of either loading or unloading passengers.[3]

17.    On August 6, 2019, New York's then-Governor Andrew Cuomo signed into law VTL § 1174-a, an amendment to VTL § 1174 which assesses liability to the vehicle owner where the vehicle violated VTL 1174(a).

---

[3] *See* New York VTL § 1174(a).

18.    Specifically, VTL § 1174-a was created for the purpose of offering counties, cities, towns, and/or villages throughout the State of New York the opportunity to work with local school districts to adopt programs by which school bus photo violation monitoring systems would be used to help enforce the existing provisions of VTL § 1174.[4]

19.    The newly-added section further authorizes and empowers counties, cities, towns, or villages to install and operate school bus photo violation monitoring systems, which could be either stationary or mobile, that are designed to capture images and/or video of vehicles violating VTL § 1174, under the condition that such photo monitoring systems shall only be installed or operated on school buses after an agreement is reached with the school district wherein the installation and operation is to occur.[5]

20.    In accordance with VTL § 1174-a, local laws and ordinances were adopted throughout the State of New York, authorizing the installation and operating of school bus photo violation monitoring systems on buses; pertinent amongst those local laws and ordinances is Town Code § 186-2.

21.    Violations of VTL § 1174 that are recorded via the school bus photo monitoring systems installed pursuant to VTL § 1174-a can result in fines starting at $250 for a first violation, and as high as $300 for subsequent violations within an 18-month period.[6]

22.    Notwithstanding the provisions of any local laws or ordinances enacted in furtherance of VTL § 1174-a, VTL § 1174-a still requires that an agreement be reached with a school district in order for school bus monitoring systems to be installed or operated within that school district; as noted above, the Town of Hempstead enumerated this requirement within its own stop-arm violation code in section 186-2(B)(2).

---

[4] *See* New York VTL § 1174-a.
[5] *See Id*.
[6] *See* New York VTL § 1174(c).

ii.        **Town of Hempstead Code Section 186-2**

23.     Pursuant to VTL § 1174-a, the Town of Hempstead enacted Chapter 186 of the Code of the Town of Hempstead. Chapter 186 is titled "Failure to Stop for School Buses" and § 186-2 establishes the Town's authorization of the use of school bus photo monitoring systems in the Town.[7]

24.     In accordance with the establishment of the Town of Hempstead's new Stop-Arm Law program, Town of Hempstead authorized the installation and operation of school bus photo violation monitoring systems to document violations of VTL § 1174. Such installation and operation was contingent upon an agreement between the Town of Hempstead and the school districts within which the mobile photo violation monitoring systems would be installed and utilized.[8]

**B.        Stop-Arm Law Master Agreement with BusPatrol**

25.     In order to enforce Town Code § 186-2 and administer a stop-arm violation monitoring system pursuant thereto, the Town of Hempstead entered into an agreement with BusPatrol.

26.     BusPatrol markets itself as providing "end to end" services. Specifically, BusPatrol markets that it supplies and installs the safety technology, handles citation management, provides payment and processing services for the violations, provides cloud-based software for online viewing of the video footage, creates evidence packages for law enforcement review, manages requests for court hearings, and more.[9]

27.     What makes BusPatrol's services so attractive is that it involves no capital outlay

---

[7] *See* Town of Hempstead Code § 186-2, generally.
[8] *See* Town of Hempstead Code § 186-2(B)(2).
[9] *How it Works, Reducing Stop-Arm Violations at No Cost to Communities*, BUSPATROL, https://buspatrol.com/how-it-works/.

from the municipalities, towns, or school districts, but rather is fully funded through the revenue generated from the Stop-arm law program.[10]

28.    BusPatrol has entered into agreements with other counties and municipalities for the purpose of providing their school bus photo monitoring systems and administrative services related to the stop-arm violation of those counties and municipalities; one such county is Duchess County, New York, who had entered into their own agreement with BusPatrol prior to the Town of Hempstead doing so.

29.    The Town of Hempstead determined that the terms of the Dutchess County agreement with BusPatrol were substantially similar to the services the Town desired from BusPatrol, and otherwise met the criteria of 103(16) of the Town's Purchasing Guidelines. Therefore, Defendant adopted the terms of the Duchess County Master Agreement and incorporated and modified its terms, as set forth in its own agreement (the "Master Agreement") with the Town of Hempstead.[11]

30.    Pursuant to these agreements, BusPatrol was responsible for installing and maintaining the video cameras on the school buses, as well as collecting video footage of potential violations, screening the footage of such violations, and creating evidence packages that substantiate the existence of the violations alleged in the NOLs disseminated by BusPatrol.

31.    In sum, BusPatrol not only advertises itself as providing end to end services, it has explicitly contracted to provide such services to counties and municipalities, including the Town of Hempstead. Thus, BusPatrol acknowledges the role it plays, not only in helping to install and

---

[10] *How the BusPatrol Safety Program is Different from Traditional Enforcement*, BUSPATROL, https://buspatrol.com/blog/mission/how-the-buspatrol-safety-program-is-different-to-any-other-traffic-enforcement-program/.

[11] *See* Exhibit A attached hereto, a copy of the Master Agreement between the Town of Hempstead and Bas Patrol pertaining to the enforcement of VTL § 1174-a and Town Code § 186-2.

maintain the photo monitoring systems used for enforcement of certain traffic laws, but also the role it plays in enforcing the laws themselves through the review of evidence and dissemination of NOLs.

### C.    Substantive Allegations

#### i.    Town of Hempstead and the Lawrence Union Free School District Never Entered Into Any Agreement Pursuant to § 186-2(B)(2)

32.    Pursuant to VTL § 1174-a, the enforcement of VTL § 1174(A) through the use of school bus photo monitoring systems is contingent on an agreement between the "county, city, town, or village" and the school district wherein the program would be administered.

33.    Indeed, even the Town of Hempstead chose to include this same requirement in its Code § 186-2(B)(2) that authorized the use of school bus photo monitoring systems within the Town of Hempstead. Specifically, § 186-2(B)(2) states that "[n]o mobile school bus photo violation monitoring system shall be installed or operated on any such school buses *unless the Town and such school district enter into an agreement for such installation and operation*."

34.    The Town of Hempstead has not publicly announced or entered into agreements with every school district within its borders as to the implementation of the Town Code § 186-2.

35.    Amongst the myriad school districts within the borders of the Town of Hempstead that have not yet come to an agreement regarding the implementation of the Stop-Arm Law program is the Lawrence Union Free School District.

36.    In fact, the Lawrence Union Free School District explicitly disclaimed that it has not agreed to participate in the Stop-Arm Law program at all, going so far as to say that any tickets generated within the district are "void" as a result.[12]

---

[12] *See* Exhibit B attached hereto, a letter from the Lawrence Union Free School District dated November 25, 2024, affirming that the district had not entered into an agreement with the Town

ii.     **Plaintiff was Ticketed Under the Stop-Arm Law Program for Alleged Violations that Occurred Within the Lawrence Union Free School District Despite There Being No Agreement With the Town of Hempstead**

37.    Despite the fact that the Lawrence Union Free School District has yet to come to an agreement with the Town of Hempstead pursuant to VTL § 1174-a and Town Code § 186-2(B)(2), Plaintiff has been ticketed and subsequently induced to pay fines arising from the issuance of two NOLs by Defendant.

38.    Since enactment of Town Code § 186-2(B)(2), vehicles owned by Plaintiff have been allegedly caught by one of BusPatrol's cameras in at least three instances in a location where the school district didn't enter into an agreement for such installation and operation: (i) citation number TH-1954616; (ii) citation number TH-1966699; and (iii) citation number TH-3241219. Each of the foregoing tickets received by Plaintiff explicitly state that the fines associated therewith are in accordance with VTL § 1174-a and Town Code § 186-2.

39.    Upon information and belief, all locations at which Plaintiff received NOLs are within the borders of the Lawrence Union Free School District.

40.    Plaintiff received the NOLs as a result of a mobile school bus photo violation monitoring system that was installed and/or operated on school buses in a location where the school district didn't enter into an agreement for such installation and/or operation.

iii.    **The Town of Hempstead Issued 80,000 School Bus Camera Tickets In Districts That Don't Participate In Program**

41.    As stated above, according to an investigation conducted by *Newsday*, the Town has issued more than 80,000 school bus camera tickets within the Baldwin, Hempstead, Lawrence and Valley Stream 13 districts, which never agreed to participate in the Stop-Arm Law program. These tickets, if collected, are worth approximately $20 million to the program.

of Hempstead for the Stop-Arm Law program.

42.    As set forth above, state and local law explicitly requires school district approval for bus camera tickets to be issued on their behalf, a step that leaders of four districts in southwestern Nassau County told *Newsday* they did not take. But officials in two of those districts said their school buses are equipped with cameras and one superintendent said those cameras are generating tickets, which would conflict with the law.

43.    "It's baffling to me that tickets would be issued when they know they did not have the authority to do it," Baldwin Union Free School District Superintendent Shari Camhi said in an interview given to *Newsday*. Lawrence, another school district that doesn't participate in the bus camera program, published a letter on its website saying tickets issued within its boundaries are "void."[13]

44.    As set forth in further detail above, the Town passed its own school bus camera law in 2022, also requiring districts to sign on to the program. To that end, the town contracted with Defendant to install the cameras on buses and to manage the Town's ticket program. In exchange for this service, BusPatrol gets 45% of the ticket revenue, while the town keeps the remaining 55%, with the tickets carrying a minimum fine of $250.[14]

45.    Approximately 50,000 tickets were written in Hempstead Union Free School District alone, despite the fact that the district never agreed to join the program and does not offer busing to its general student body.[15]

46.    School district officials in Baldwin, Hempstead and Lawrence have said that cameras have been rolling on their own school buses, and have recognized that these tickets

---

[13] *Id*.

[14] Payton Guinon, *Town of Hempstead issued 80,000 school bus camera tickers in districts that don't participate in the program*, NEWSDAY, Jan. 23, 2025, https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib?utm_medium=web_share_api&utm_campaign=web_share_api.

[15] *Id*.

should be considered "void."

47.    Former county legislators have recognized the problematic nature of issuing tickets where there is in fact no jurisdiction. For instance, Paul Sabatino, an attorney and former Suffolk County legislative counsel, stated "[t]hat would not be permissible," when asked about Hempstead Town issuing tickets from buses operating for districts that haven't joined the program. Sabatino further clarified, "[y]ou didn't even have the jurisdiction from the get-go" to issue the tickets in these districts.

48.    Grace Kwon, spokeswoman with ZE Creative Communications, which represents the Lawrence district, was unable to say if the citations issued there were from district-contracted buses or those from another district, but clarified that no other district's buses pick up students in Lawrence aside from busing for preschoolers and some private transportation. However, despite this fact, the Town issued roughly 18,000 school bus tickets in Lawrence district in 2023 and 2024, including one to Plaintiff in this Action.

49.    Addressing the matter in a June letter obtained by *Newsday* and quoted in its article, Lawrence School Board President Murray Forman wrote: "There is no authorization for summonses to be issued on behalf of the Lawrence UFSD at any location within the borders of School District 15. Summonses issued within the boundaries of the district are therefore void and cannot be upheld."[16]

**D.    Class Action Allegations**

50.    Plaintiff bring his claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), on behalf of himself and on behalf of the owners of vehicles who were issued NOL's by BusPatrol pursuant to VTL § 1174-a and/or Town Code § 186-2 since January 1, 2022, within school districts that have either not opted in to the VTL § 1174-a

---

[16] *Id.*

and/or Town Code § 186-2 or explicitly opted out of VTL § 1174-a and/or Town Code § 186-2.

51.     Excluded from the Class are Defendant; any co-conspirators; federal governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies and instrumentalities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

52.     Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for Class certification or as warranted by discovery.

53.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in FRCP Rule 23.

54.     The Class encompasses thousands of vehicle owners who received tickets in the Town of Hempstead of the State of New York. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

55.     The identity and address of each Class member can be readily ascertained through documents in the possession of Defendant and/or its agent, as it maintains records of violations containing contact information for members of the proposed Class. Class members may be notified of the pendency of this action by mail, electronic mail, and/or other electronic means, including but not limited to social media.

56.     There are questions of law and fact that are common to the Class and predominate any questions affecting only individual members of the Class. The damages sustained by Plaintiff and Class members arise from a common nucleus of operative fact arising out of Defendant's course of misconduct. The common questions include, but are not limited to:

A.     Whether Defendant was operating school bus monitoring system(s) on school bus(es) in violation of New York VTL § 1174-a and Town Code § 186-2;

B.      Whether Defendant issued or caused to be issued NOLs for alleged violations of New York VTL § 1174-a and Town Code § 186-2 that occurred within school districts that had not entered into an agreement in violation of New York VTL § 1174-a and Town Code § 186-2;

C.      Whether Defendant was issuing or was causing to be issued NOLs that falsely represented an obligation to pay fines for alleged violations of New York VTL § 1174-a and Town Code § 186-2 that occurred within school districts that had not entered into an agreement in violation of New York VTL § 1174-a and Town Code § 186-2;

D.      Whether the issuance of such NOLs caused or induced Class members to incur and/or pay the monetary fines stipulated on those NOLs despite the fact that the violations alleged on the NOLs occurred within school districts that had not entered into an agreement in violation of New York VTL § 1174-a and Town Code § 186-2; and

E.      Whether Defendant was unjustly enriched due to the issuance of NOLs which caused or induced Class members to incur and/or pay the monetary fines stipulated on those NOLs.

57.     Plaintiff's claims are typical of the claims of the Class, as each Class member was subject to the same deceptive practices and malfeasance attributable to Defendant. Furthermore, Plaintiff and all members of the Class sustained monetary damages including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

58.     Plaintiff is committed to the vigorous prosecution of the Class' claims. Plaintiff

will fairly and adequately represent the interests of the Class. No conflict of interest exists between Plaintiff as the Class' representative and the Class members with respect to the claims for relief requested.

59.    Plaintiff, as representative of the Class, and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution. Plaintiff's attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class, and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

60.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them.

61.    A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

62.    As a result of Defendant's conduct, Defendant is liable to Plaintiff and the Class for the full amount of any loss suffered by Plaintiff and the Class, as well as any other actual, statutory, or otherwise applicable damages.

63.    Furthermore, the Class may also be certified because: (1) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish

incompatible standards of conduct for Defendant; (2) The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and (3) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I

### Against Defendant for Unjust Enrichment

64.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

65.     Defendant has unlawfully obtained money belonging to Plaintiff and members of the Class by issuing invalid and unauthorized NOLs within school districts that have not come to an agreement pursuant to VTL § 1174-a and Town Code § 186-2 for the installation and operation of school bus photo monitoring systems.

66.     Defendant has thus been unjustly enriched through its course of conduct which has increased its revenues at the expense of members of the Class who were not rightly subject to monetary penalties under the law.

67.     Plaintiff and members of the Class are entitled to restitution, as it would be unjust and unconscionable to allow Defendant to profit off the enforcement of a law that simply does not apply to Plaintiff and the Class.

68.     By virtue of the inherently invalid and void nature of any NOLs issued for alleged violations within school districts that did not come to an agreement pursuant to VTL § 1174-a and Town Code § 186-2, the monies collected from Plaintiff and the Class through ticketing and

fines rightly belong to Plaintiff and the Class.

69.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class members are entitled to restitution from Defendant, and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Defendant through this inequitable conduct.

## COUNT II

### Against Defendant for Conversion

70.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

71.     The Town has exercised control over the assets of Plaintiff and other Class members by way of unlawfully issuing fines under VTL § 1174-a and Town Code § 186-2, and in doing so had interfered with their right of possession of those assets.

72.     Each penalty payment was a specific, identifiable sum when paid, which BusPatrol received a portion of.

73.     Thus, Defendant is liable to Plaintiff and the Class for conversion.

## COUNT III

### Against Defendant for Negligent Misrepresentation

74.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

75.     Through the issuance of tickets to Plaintiff and members of the Class which alleged violations of VTL § 1174-a and Town Code § 186-2, Defendant negligently misrepresented to Plaintiff and members of the Class that they had violated such laws and were legally obligated to pay fines thereunder.

76.     In reality, because Plaintiff and members of the Class were ticketed for violations occurring within school districts that had not agreed to or authorized the use of school bus photo

monitoring systems within their districts in according with VTL § 1174-a and Town Code § 186-2, Plaintiff was under no such legal obligation to pay the fines outlined on the issued tickets.

77.     Thus, all such NOLs actively misrepresented the legal liabilities and obligations of Plaintiff and members of the Class, leading them to pay fines that were null and void.

78.     At the time Defendant made these representations to Plaintiff and Class members, Defendant should have known that these representations were false, or made such representations without a basis for their veracity.

79.     Defendant had, and continues to have, a duty to inform Plaintiff and Class members that these NOLs were legally null and void, and that the fines issued via these NOLs were not legally required to be paid.

80.     Based upon Defendant's negligent misrepresentations and/or omissions and/or concealments of these material facts, Defendant induced Plaintiff and Class members to rely upon its misrepresentations and/or omissions and to remit payment and associated fees for legally insufficient alleged Stop-Arm Violations.

81.     Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient alleged Stop-Arm Violations.

82.     As a result of Defendant's deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT IV

### Against Defendant for Violation of New York Civil Rights Law 11

83.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as if fully set forth herein.

84.    As set forth herein above, the fines issued pursuant to the fraudulent NOLs described herein were imposed upon individuals whose alleged violation of VTL § 1174-a and Town Code § 186-2 occurred within a school district that had not entered into an agreement with the Town of Hempstead regarding participation in the Stop-Arm Law program.

85.    Without such agreement between a given school district and the Town, pursuant to both New York VTL § 1174-a and Town Code § 186-2, the installation and operation of school bus monitoring systems on school buses within that school district is unlawful.

86.    As such, any NOLs issued pursuant to an alleged violation captured by unlawfully installed or operated school bus monitoring systems are null and void.

87.    New York Civil Rights Law 11 requires that the issuance of fines be based upon "reasonable cause."

88.    Reasonable cause cannot possibly exist for the issuance of fines pursuant to the unlawful use of school bus photo monitoring systems, and therefore fines issued by Defendant in conjunction with NOLs issued pursuant to the use of such photo monitoring systems are contrary to and inconsistent with the New York State Constitution.

89.    As a direct and proximate result of Defendant's wanton indifference to the rights of Plaintiff and the Class under New York State Civil Rights Law 11, such rights belonging to Plaintiff and the Class have been violated.

90.    Plaintiff and the Class are entitled to legal and equitable relief, including a refund

of the portion of the fines and fees that have been remitted to Defendant, as well as damages, pre- and post-judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court.

## COUNT V

## Declaratory Judgment Pursuant to CPLR § 3001

91.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

92.    Plaintiff seeks judgment declaring that, on the facts alleged herein, BusPatrol has been and continues to be unjustly enriched through its retention of penalties unlawfully imposed; that it has and continues to convert an identifiable sum of money through its imposition and retention of penalties unlawfully imposed; that it has and continues to engage in negligent misrepresentations, and fraudulent misrepresentations; that it has and continues to fraudulently induce the payment of penalties unlawfully imposed; that its imposition and retention of unlawful penalties constitutes a violation of Civil Rights Law § 11; and that its acts as alleged herein constitute a violation of General Business Law § 349.

93.    An actual case or justiciable controversy exists regarding the legality of these practices as Defendant continues to issue these NOLs which are legally insufficient.

94.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties and will provide certainty regarding the validity of the certification and issuance of these NOLs.

95.    By reason of the foregoing, Plaintiff and Class members are entitled to declaratory judgment declaring that the practices complained of herein are unlawful under the law.

## COUNT VI

### <u>Against Defendant for Fraudulent Concealment/Fraudulent Inducement</u>

96.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

97.     Defendant falsely represented to Plaintiff and members of the Class that they were legally obligated to pay fines under VTL § 1174-a and Town Code § 186-2 through the issuance of NOLs for alleged violations of the foregoing statutes within school districts that had not agreed to have school bus photo monitoring systems installed or operated within their district.

98.     Defendant fraudulently concealed the fact that these NOLs were not legally valid, as well as the fact that VTL § 1174-a and Town Code § 186-2 were not enforceable within the school districts wherein the alleged violations occurred.

99.     Defendant knew that the issuance of NOLs for alleged violations occurring in a school district that had yet to agree to participate under VTL § 1174-a and Town Code § 186-2 was unlawful, yet they issued the NOLs anyway without any attempts at retraction or repayment of the illegitimate fines imposed on Plaintiff and members of the Class.

100.     Defendant's fraudulent concealment of the legal invalidity of the issued NOLs induced Plaintiff and members of the Class to make payments pursuant to the fraudulent NOLs, as they had no reason to believe that their alleged violations were not legally subject to VTL § 1174-a and Town Code § 186-2.

101.     Defendant engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiff and Class members rely upon such concealments, misrepresentations, and omissions.

102.     Defendant had, and continues to have, a duty to inform Plaintiff and Class

members that the NOLs issued to them were legally null and void, and that payment of the fines outlined therein was not legally required.

103.    Based upon Defendant's false representations, omissions, and/or concealments of these material facts, Plaintiff and Class members were induced to rely upon Defendant's misrepresentations and/or omissions and to remit payment and associated fees for legally void NOLs.

104.    Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally void NOLs.

105.    As a result of Defendant's fraudulent concealment and inducement, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against Defendant as follows:

A.    Declaring that the practices complained of herein are unlawful under New York State law;

B.    Certifying this action as a class action;

C.    Designating Plaintiff as representative of the Class;

D.    Designating Plaintiff's counsel as counsel of record for the Class;

E.    Determining the damages sustained by Plaintiff and the Class as a result of Defendant's unlawful conduct, and awarding those damages against Defendant and in

favor of Plaintiff and the Class, plus such pre- and post-judgment interest as may be allowed;

F.    Awarding Plaintiff and the Class any applicable statutory damages;

G.    Awarding Plaintiff and the Class any and all other applicable damages;

H.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs including but not limited to those under 42 U.S.C. § 1988;

I.    Alternatively to the foregoing, restituting the amount by which BusPatrol was unjustly enriched from Plaintiff's and the Class' payment of the Notice of Liability;

J.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

K.    Granting Plaintiff and the Class such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 29, 2025                              Respectfully submitted,

*/s/ Joshua M. Lifshitz*
**LIFSHITZ LAW PLLC**
Joshua M. Lifshitz
1190 Broadway
Hewlett, NY 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
jlifshitz@lifshitzlaw.com

*Attorneys for Plaintiff*

## **VERIFICATION**

STATE OF NEW YORK        )
                         )        ss.:
COUNTY OF NASSAU         )

GUY TSADIK, under penalties of perjury, declares as follows:

1.        I have read the contents of the foregoing Verified Class Action Complaint.

2.        The information stated therein is true to my personal knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe the information to be true.

Dated: January 29, 2025
            Lawrence, NY

By: _____
Guy Tsadik